IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSLYVANIA

| | | |
|---|---|---|
| JOHN JOSEPH DEEM, | ) | Civil Action No. 17-704 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| BEAVER COUNTY, WARDEN WILLIAM SCHOUPPE, JENNIFER MONZA, CORRECTIONAL OFFICER PICCINI and CORRECTIONAL OFFICER SPADE, | ) ) ) ) ) ) | ECF No. 23 |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Presently before the Court is the Motion for Summary Judgment filed by Defendants Beaver County, Warden William Schouppe, Jennifer Monza, Correctional Officer Piccini, and Correctional Officer Spade (ECF No. 23). For the reasons that follow, the Motion will be granted.

RELEVANT FACTS

The following facts are taken from the parties' Concise Statements of Material Facts and Responses thereto (ECF Nos. 25, 33 & 36), and are undisputed unless otherwise indicated.

On October 7, 2015, Plaintiff John Joseph Deem ("Plaintiff") was admitted to the Beaver County Jail. (ECF Nos. 25 & 33 ¶ 1.)

This lawsuit arises out of an alleged failure to protect Plaintiff from being assaulted by other inmates on November 18, 2015. (ECF Nos. 25 & 33 ¶ 12.) James Bienick, Michael Deal and John Ours were inmates involved in the altercation on that date. At that time, Plaintiff, Bienick, and Deal were facing charges for allegedly being involved in a criminal conspiracy

involving theft and receipt of stolen property. (ECF Nos. 25 & 33 ¶ 13.) In this civil action, Plaintiff alleges that Classification Coordinator Jennifer Monza, Correctional Officers Harold Spade and Pauline Piccini, and Warden Schouppe knew or should have known that Bienick, Deal and Ours would assault Plaintiff, and failed to protect him from their assault. (ECF Nos. 25 & 33 ¶ 14.)

Before the assault, on October 8, 2015, Plaintiff met with Jennifer Monza in the Beaver County Jail. Ms. Monza asked Plaintiff if he had any enemies in the Beaver County Jail. Plaintiff advised that the only enemy he had in the Beaver County Jail was Aaron Dom. (ECF Nos. 25 & 33 ¶ 15.) In addition, on October 8, 2015, Plaintiff signed a form acknowledging: "I have received a copy of the Inmate Handbook numbered 00292 stamped envelope and a sheet of paper from the Counselor." The number "00292" reflecting the particular copy of the Inmate Handbook was hand written on the document itself. (ECF Nos. 25 & 33 ¶ 2.) When Plaintiff received his copy of the Inmate Handbook, he was able to read and write. (ECF Nos. 25 & 33 ¶ 3.) The Inmate Handbook includes an "Inmates' Rights" section that advises inmates that they have rights while incarcerated at the Beaver County Jail. These rights include, but are not limited to: "Protection from personal abuse, . . . personal injuries, . . . and harassment[;]" and "Humane and Fair Treatment[.]" (ECF Nos. 25 & 33 ¶ 4).

The Beaver County Jail maintains an inmate grievance process. (ECF Nos. 25 & 33 ¶ 5.) Defendants assert that the grievance process is detailed in the Inmate Handbook. Plaintiff agrees that the Beaver County Jail Formal Complaints (Grievances) procedure is explained in the Inmate Handbook, but denies that the process is "detailed" because there is no explanation as to when a grievance should be filed or what the consequences are for failing to file a grievance.

(ECF Nos. 25 & 33 ¶ 6).  The Inmate Handbook instructs an inmate as follows if he wants to file a grievance:

> Housing Officer will make this form available and provide it when needed by you.  Upon completion of the form including a signature and date; the form is to be placed in the request box.  The Captain, upon receiving the form, will log the grievance and/or appeal that was filed by you.  After the form is logged it will be forwarded to the responsible staff member for a response and possible solution.

(ECF Nos. 25 & 33 ¶ 7).  The Inmate Handbook explains how an inmate can appeal if the initial response to the grievance is not satisfactory.  It instructs that after the inmate receives a response from the staff member, "You [the inmate] will then decide if you will accept or deny the action, proposed by the Staff member and return the form to the Captain.  If denying the proposed action, you must state why before returning the form.  Either way you must again sign and date the form before submitting it."  (ECF Nos. 25 & 33 ¶ 8).  If the inmate signs the grievance and indicates that he rejects the solution proposed by the staff member, the captain receiving the grievance form will forward it to the shift supervisor or deputy warden.  The shift supervisor or the deputy warden will then review the grievance, prepare a response, and return it to the inmate.  When the shift supervisor or deputy warden's response to the grievance is not satisfactory to the inmate, the inmate is given another "opportunity to respond; sign and date and return the form." (ECF Nos. 25 & 33 ¶ 9).  If the inmate signs and resubmits the grievance form rejecting the deputy warden's proposed solution, it is sent to the warden for review.  The deadline for the inmate to appeal the decision to the warden is five working days from the inmate's receipt of the deputy warden or shift supervisor's proposed solution.  The warden then reviews the grievance and reaches a final decision on the grievance.  The Inmate Handbook advises, in bold text, that "the Warden's decision will be **final**.  ***Forms that are not legible, signed, dated and submitted***

3

*within the five (5) day window will not be addressed."* (ECF Nos. 25 & 33 ¶ 10). The Inmate Handbook instructs inmates that they may refile grievances on the same issue, but "cannot re-file again on the exact same issue until 15 days have passed, since the first complaint was filed." (ECF Nos. 25 & 33 ¶ 11).

Plaintiff wrote a request slip to Monza on November 18, 2015 that stated the following:

> I was never classified when got here on 10-7-15. Bc I was sent to RHU. Then I was transferd[sic] to butler on 10/23-15. And I was Brought back here on 11-16-15. And I was put on A pod/RHu. And I have co-defendents[sic] from a past case on this pod. Mike Deal and James Beinick[sic]. I also need to talk to you about all my enimes [sic].

(ECF Nos. 25 & 33 ¶ 16.) Inmates place request slips into a box for collection. The box is periodically emptied with the request slips routed and delivered to the appropriate person. (ECF Nos. 25 & 33 ¶ 17.) Plaintiff did not speak with Monza on November 18, 2015 prior to the altercation that forms the basis of this civil action. (ECF Nos. 25 & 33 ¶ 18.) Monza states in her affidavit that she never received Plaintiff's November 18, 2015 request slip until after the altercation between Plaintiff, Deal, Bienick and Ours. Plaintiff indicates that additional discovery may reveal that she did, although at this time, he has insufficient information to form a response. (ECF Nos. 25 & 33 ¶ 19.)

On November 18, 2015, Plaintiff was transported from his cell to visit with his public defender. The Complaint alleges that when Plaintiff's meeting with his attorney was over, Officer Spade walked him back to the cell block and unshackled him. According to Plaintiff's written Statement, Officer Piccini removed Plaintiff's shackles. As Plaintiff was walking back to his cell, Mike Deal "charged out of his cell and attacked me [Plaintiff.]" Bienick and Ours then joined in. Plaintiff was taken to the hospital for treatment of a dislocated shoulder. (ECF Nos. 25 & 33 ¶¶ 20-23.)

Defendants assert that Plaintiff did not file a grievance concerning the November 18, 2015 assault that forms the basis of this civil action. Plaintiff denies this assertion, indicating the following: "Plaintiff filed a grievance with the Beaver County Jail when he completed a request slip to . . . Monza advising her that he had been housed with co-defendants and requested to be reclassified. [P]laintiff informally filed a grievance when he advised . . . Officer Spade that he was in danger." (ECF Nos. 25 & 33 ¶ 24) (internal citations omitted).

After the assault, Plaintiff was kept separate from Bienick, Deal and Ours. (ECF Nos. 33 & 36 ¶ 1.) The Jail instituted an investigation and brought disciplinary action against them. Formal criminal complaints were filed and they were ultimately found guilty and sentenced for the assault on Plaintiff. (ECF Nos. 33 & 36 ¶¶ 2-3.)

Plaintiff filed a grievance on January 20, 2016 complaining about fruit on his food tray. (ECF Nos. 25 & 33 ¶ 25.)

Plaintiff was a state prison inmate on the day this lawsuit was filed. (ECF Nos. 25 & 33 ¶ 25.)

LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a) & (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying

evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non- movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

ANALYSIS

1. The Exhaustion Requirement

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted). Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93 (quoting *Porter*, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id*. at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, *Booth v. Churner*, 206

F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Jetter v. Beard*, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368; *see also Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); *Camp*, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris,* 149 F. App'x at 59. Nor can an

8

inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith,* 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore,* 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

No analysis of exhaustion may be made absent an understanding of the administrative process available to inmates. In this regard, the United States Supreme Court noted the following:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirement, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007).

2. The Beaver County Jail's Grievance Process

The Beaver County Jail maintains a grievance process that is detailed in the Inmate Handbook and distributed to inmates. The Inmate Handbook advises inmates that if they want to file a grievance, the housing officer will provide the inmate with a written grievance form. The inmate is instructed to complete and sign the grievance form and place it in the request box. Upon receipt, the captain logs the grievance and forwards it to the appropriate staff member for a response and possible solution. When the staff member has signed and dated the form, it is

9

returned to the captain. The captain reviews the form and returns it to the inmate. The inmate then decides whether he will accept or deny the action proposed by the staff member, and return the form to the captain. There are multiple levels of appeal if the inmate is not satisfied with the initial response.[1] *See* Beaver County Jail Inmate Handbook, Formal Complaints (Grievances) Appendix 3, ECF No. 26-4 at 4.)

The parties agree that the PLRA applies to Plaintiff's claim. (ECF No. 24 at 2-4; ECF No. 32 at 3.) In support of their Motion for Summary Judgment, Defendants argue that Plaintiff's claim is barred by the Prison Litigation Reform Act because he failed to file a grievance complaining of the November 18, 2015 attack pursuant to the Beaver County Jail grievance procedures, thereby failing to exhaust his administrative remedies. Plaintiff responds that he has exhausted his administrative remedies because he submitted a request slip to Jennifer Monza on November 18 requesting that he not be housed on the same pod with his codefendants, and because he orally advised Officer Spade twice that he was in danger.

Here, Plaintiff cannot escape the fact that he never filed a grievance complaining of the attack that occurred on November 18, 2015. The parties agree that Plaintiff received a copy of the Beaver County Jail Inmate Handbook and that the Handbook explains the institution's grievance procedure. Instead, Plaintiff contends that his request slip to Monza regarding his housing classification and his oral complaint to Officer Spade, satisfy the Jail's grievance requirement. The grievance procedures, however, require that grievances be stated in writing. Moreover, a request slip, is not a grievance. *See, e.g., Small v. Camden County*, 728 F.3d 265, 272 (3d Cir. 2013) (request slips are prospective requests for services, not retrospective

---

[1] The Court will not detail the appeal procedures here as they are not relevant to its analysis.

complaints).[2]  As noted by Defendants, a grievance is defined under Pennsylvania law as "[a] formal written complaint by an inmate related to a problem encountered during the course of his confinement."  37 Pa. Code § 95.220a.  Plaintiff's request slip did not concern the attack but a request for housing classification.  Therefore, the Court finds as a matter of law that Plaintiff failed to exhaust his administrative remedies relating to the November 18, 2015 attack.

For the reasons discussed above, the Court will grant Defendants' Motion for Summary Judgment.  An appropriate Order will follow.

Dated:  January 23, 2019

                                                       BY THE COURT

                                                       s/Lisa Pupo Lenihan
                                                       LISA PUPO LENIHAN
                                                       United States Magistrate Judge

---

[2] Importantly, the record does not reflect that Plaintiff was somehow mislead by Jail personnel or was otherwise prevented from complying with the Jail's written grievance procedure.  Instead, the record reflects that when Plaintiff had a complaint relating to his food tray, he filed a grievance pursuant to Jail grievance procedures.  (ECF Nos. 25 & 33 ¶ 25.)